IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

JOSEPH DRAEGO

       **Plaintiff,**

v.              Civil Action No.: 3:16-cv-00057

CITY OF CHARLOTTESVILLE

       **Defendant.**

**REPLY BRIEF IN SUPPORT OF 12(b)(6) MOTION TO DISMISS
AND IN RESPONSE TO AMICUS CURIAE BRIEF OF THE THOMAS
JEFFERSON CENTER FOR THE PROTECTION OF FREE EXPRESSION**

  The City of Charlottesville (hereinafter "City") submits this Reply Brief in response to the Amicus Curia Brief of the Thomas Jefferson Center for the Protection of Free Expression ("Amicus Curia Brief").

**DISCUSSION**

I. **Plaintiff's words and actions were disruptive of the City Council Meeting on June 20, 2016, and the Charlottesville City Council followed its *Council Meeting Procedures* when it terminated Plaintiff's right to speak and escorted him from the Meeting.**

  On page 1 of its Amicus Curiae Brief, the Thomas Jefferson Center for the Protection of Free Expression states that "… Plaintiff's comments caused no disruption to the proceedings …" and "… while the Rules call for a warning in the form of a call to order, this procedure was not followed."

  However, Defendant's Exhibit No. 1 (Transcript of Public Comments by Joe Draego on June 20, 2016, filed with Reply Brief on September 8, 2016), proves otherwise. A review of this transcript proves that the Plaintiff's words and actions on

June 20, 2016, were disruptive. After being called to order and ordered to cease his speech, Plaintiff repeatedly persisted in his conduct, his speech was terminated, and he was removed from the City Council meeting. As his words and actions indicated, Plaintiff fully intended his disruptive behavior and City Council fully complied with its Rule D(10).

Plaintiff was warned on at three occasions on June 20, 2016 of his responsibility to comply with the *Council Meeting Procedures*. See Defendants Exhibit No. 1 and the Video. In his introductory comments at the June 20, 2016 City Council meeting, immediately preceding Plaintiff's initial statements, Mayor Signor advised Plaintiff and all attendees, "We welcome public comment. It is an important part of our meeting.… Please follow these guidelines for public comments…. Please refrain from using obscenities. If you cannot follow the guidelines you will be escorted from City Council Chambers and not allowed to reenter. And then there are also these other guidelines in our procedures that we have." See Defendant's Exhibit No.1.

Plaintiff was also warned a second time by Mayor Signor during Plaintiff's first appearance before City Council on June 20, 2016 at the first "Matters by the Public" session during that meeting. When Plaintiff spoke about an alleged rape of a five year old girl in Twin Falls, Idaho and stated lewd details of the alleged sexual encounter, he was warned by Mayor Signor, "We try to prevent description of vulgarity." And when Councilmember Szakos stated to Plaintiff, "Do you realize that there are children watching on TV? Can you just keep in mind that there are children watching on TV?" Plaintiff responded, "Well, I'm keeping in mind that there are children in this community that need to be protected from your reckless policies. So please do not lecture me."

Plaintiff was also warned a third time by Mayor Signor during Plaintiff's second appearance before City Council on June 20, 2016 at the second "Matters by the Public" session. On this occasion, when Plaintiff stated that "… the Muslims, monstrous maniacs that they are, read their holy book and then go out and perpetrate these horrible crimes," Mayor Signor stated, "I'm going to interrupt you because we actually prohibit defamatory attacks on individuals or groups in our rules.…" In response, Plaintiff stated, "But the Constitution guarantees me the right to free speech, and I am allowed to speak my mind, and I will do so." See Defendant's Exhibit No.1.

Paragraph D(10) of the *Council Meeting Procedures*, cited by the Thomas Jefferson Center, states three steps in implementing this Rule: (1) a call to order ("Any speaker who violates the rules will be called to order by the Mayor."), (2) if persistence of conduct, then order of cessation ("If the remarks or conduct persists, the Mayor shall order the speaker to cease speaking and be seated.") and (3) if failure to heed then use of Sergeant-at-Arms ("If the order is not heeded, the Mayor shall direct the Sergeant-at-Arms to escort the individual from the meeting room.").

During his second appearance before City Council on June 20, 2016, Mayor Signor attempted to call Plaintiff to order by citing *Council Meeting Procedure* Rule D(9)(g), "I'm gonna interrupt you because we actually prohibit defamatory attacks on individuals or groups in our rules." Plaintiff's response was to interrupt the Mayor and persist in his personal attacks. "But the Constitution guarantees me … no, no, no … the Constitution guarantees me the right to free speech, and I am allowed to speak my mind, and I will do so." When Mayor Signor attempted to explain the nature of his call to order and City Council's authority ("We have, we have full authority to …"), Plaintiff again

defied the Mayor's call to order and interrupted Mayor Signor, stating, "… no, no, no, your defamatory rules do not overcome the Constitution." As a result of this persistence, Mayor Signor requested City Council to vote for removal of Plaintiff from the Council Chambers by the Sergeant-at-Arms ("I'd like to request his removal."). During and after this City Council vote (Unanimously -"Yes"), Plaintiff, again showed his persistence in defying the authority of City Council by stating, "I have a right to speak. … I have a right to speak my mind…. the Constitution guarantees me the right to free speech." When Mayor Signor requested the Sergeant-at-Arms to remove Plaintiff ("Gentlemen. Thank you."), Plaintiff again persisted in his disruption of the City Council meeting by lying down on the floor of the City Council chambers, announcing, "Come drag me out of here. I refuse to be quiet. … And shame on you all for violating my Constitution rights … no sir … you can drag me out of here."

As Mayor Signor clearly stated at the time he terminated the public comments by Plaintiff during his second appearance, the grounds was "because we actually prohibit defamatory attacks on individuals or groups in our rules." See Defendant's Exhibit No.1.

Moreover at the very next City Council Meeting, on July 5, 2016, Plaintiff appeared before City Council during the same "Public Matters" session and stated that this was the eighth time he had appeared before City Council in order to express his concern about young Muslim men as the cause of crime in Charlottesville. See, Notice of Special Meeting Document 17-1, filed September 14, 2106, together with Corrected Declaration of Paige Rice, Clerk, Document 17, filed September 14, 2016.

4

## II. The Charlottesville City Council did not exceed its authority in applying Rule D(9)(g) of the *Council Meeting Procedures* prohibiting "Defamatory attacks on individuals or groups."

On page 3 of its Amicus Curiae Brief, the Thomas Jefferson Center for the Protection of Free Expression argues that the Charlottesville City Council exceeded its authority in terminating Plaintiff's speech based upon *City Council Procedures* Rule D(9)(g) because "… the remedy for an allegedly defamed person is to seek redress through the courts by seeking an adjudication of whether the speech was defamatory as a matter of law and … determine an appropriate amount of financial damages." However, this argument ignores the rights of local governments to control the order or public discussion in limited public forums, as decided by the Fourth Circuit Court of Appeals in Steinburg v. Chesterfield County Planning Commission, 527 F.3rd 377 (4th Cir. 2008), at 387.

All of the Thomas Jefferson Center's arguments based upon the legal definition of defamation are inapplicable to the present case because this case involves the term "defamatory attacks on individuals or groups," as that term is used in *Council Meeting Procedures* Rule D(9)(g), and not a cause of action for defamation. City Council clearly has never intended to "step into the role of the defamed person to pursue a defamation claim under the doctrine of parens patriae," as contended in the Amicus Curiae Brief. However, as the Thomas Jefferson Center acknowledges at page 2 of its Amicus Curiae Brief, "'defamatory' is used by the City Council in the colloquial sense and not in the legal sense" and "…the Rule is not being utilized to curb actual defamation, but something more akin to offensive speech." This argument also ignores the fact that the word, "defamatory," is used in *Council Meeting Procedures* Rule D(9)(g) as an adjective,

5

modifying the noun "attacks" and not as an adjective modifying the term "cause of action." <u>Webster's New Collegiate Dictionary</u> defines "defame" as "disgrace, to harm the reputation of by libel or slander, accuse, or malign."

The Charlottesville City Council did not exceed its authority in applying Rule D(9)(g) of the *Council Meeting Procedures* prohibiting "defamatory attacks on individuals or groups," not defamatory causes of action.

**III. Plaintiff's disruption of the June 20, 2016 meeting of the Charlottesville City Council is neither a post hoc policy justification, nor confusion of the issue, but an accurate description of Plaintiff's words and actions, as well as the effect of his words and actions in this case, and reasonable grounds for the actions of the Charlottesville City Council.**

On page 10 of its Amicus Curiae Brief the Thomas Jefferson Center states that the City of Charlottesville's reference to Plaintiff's disruption of the City Council Meeting constitutes a "post hoc justification," that "confused the issue by claiming it silenced the Plaintiff because his statements disrupted the meeting, and that this Court should follow the Fourth Circuit precedent in <u>Steinburg</u> and evaluate the Council's legal claim based on the reasons it gave for removing the Plaintiff at the time of his removal, not post hoc justification."

Contrary to this argument in the Amicus Curiae Brief, the Fourth Circuit Court of Appeals never considered the issue of the disruption of the Chesterfield Planning Commission to be a confusion of the issues or a "post hoc justification." The Fourth Circuit rejected Steinburg's challenge to the Commission's policy prohibiting personal attacks because personal attacks inherently cause disruption of the legislative order and decorum:

> The Commission's policy against "personal attacks" focuses on the two evils that could erode the beneficence of orderly public discussion. First, as an

insult directed at a person and not speech directed at substantive ideas or
procedures at issue, a personal attack is surely irrelevant.... Second, as an insult
directed at a person and not the issues at hand, it leads almost inevitably to a
responsive defense or counterattack and thus to argumentation that has the real
potential to disrupt the orderly conduct of a meeting. As we observed in
*Collinson*, this disruption may take the form of speaking on irrelevant subjects, of
speaking too long, or of speaking in a tone or manner that threatens disruption.
895 F.2d at 1000 (Phillips concurring).

      The Commission has a significant interest in maintaining civility and
decorum during public comment sessions of public meetings, both to ensure the
efficient conduct of the people's business and to maximize citizen participation in
the discussion. See Id. To further these legitimate public interests, therefore, the
Commission adopted a policy against personal attacks.

*Steinburg*, 527 F.3d at 389.

"(O)fficials presiding over such meetings must have *discretion* … to cut off speech which they *reasonably* perceive to be, or imminently to threaten, a disruption of the orderly and fair progress of discussion, whether by nature of its irrelevance, it duration, or its very tone and manner." Collinson v. Gott, 895 F.2d 994, 1000 ( 4th Cir. 1990) (first emphasis added). Id. at 390.

As stated by the Fourth Circuit Court of Appeals, "denying a speaker at the podium the right to launch personal attacks does not interfere with what that speaker could say without employing such attacks because the same message could be communicated, indeed probably more persuasively.…" Ward v. Rock Against Racism, 491 U.S. 781, 791 (quoting Clark, 458 U.S. at 293), Id. at 387.

The transcript of this meeting clearly indicates that Plaintiff was allowed to express his opinions about people of Muslim faith, Arabs, Arab Muslims, and public safety. Moreover, when Plaintiff's three minute allotment of time during the first "Matters by the Public" session at the beginning of the City Council meeting expired, and he apparently had not completed his comments, Mayor Signer invited Plaintiff to return and speak at the second "Matters by the

7

Public" session. Plaintiff did so and was allowed to speak not once, but twice on June 20, 2016, during both "Matters by the Public" sessions at the beginning and end of the City Council meeting. Also, at the following City Council meeting, held on July 5, 2016, Plaintiff again appeared before City Council during one of its "Matters by the Public" session, spoke about the same matters, and voiced his opinions. He stated, at that time, that it was the eighth time that he had appeared before City Council to express concern about foreigners, especially young Muslim men, coming to Charlottesville, and his concern that Charlottesville will see an increase in certain types of crimes as a result.

    It was only when Plaintiff personally attacked people of Muslim faith as being "monstrous maniacs" who "read their holy book and then go out and perpetrate these horrible crimes," that Mayor Signor and City Council exercised their judgment that these remarks constituted a defamatory personal attack that had the potential to disrupt the orderly conduct of the meeting and violate the civility and decorum to ensure and maximize citizen participation by all citizens.

    The actions of the Mayor and City Council clearly had no intent to silence Plaintiff's statements and opinions on these matters because, according to Plaintiff's statement on July 5, 2016, he was allowed to speak about these same matters and opinions on eight occasions. Also, on June 20, 2016, when he did not complete his comments during the first session, Mayor Signer invited him to return during the second session and continue his comments and opinions. "But we have a free speech-we have a free period at the end of the meeting when you can also speak and anybody else." See, Defendant's Exhibit No.1.

The introductory sentence of the *Council Meeting Procedures* states that these procedures "… are designed to help City Council conduct its affairs in a timely and efficient manner, while encouraging a robust and meaningful dialogue with members of the community." Prevention of the "disruption of the orderly and fair progress of discussion, whether by nature of its irrelevance, its duration, or its very tone and manner" is a lawful exercise of restraint of speech. Steinburg, 527 F.3d at 390.

On June 20, 2016, through his words and actions, Plaintiff violated this statement of purpose as well as Rule D(9)(g) of the Charlottesville *Council Meeting Procedures*, disrupted the orderly and fair progress of the discussions during the "Matters by the Public" by the nature, irrelevance, duration, tone, and manner of his defamatory attacks on all people of Muslim faith, and the Mayor and Charlottesville City Council lawfully exercised restraint of Plaintiff's disruptive speech and conduct. Plaintiff's disruption of the June 20, 2016 meeting of the Charlottesville City Council is neither a post hoc policy justification, nor confusion of the issue, but an accurate description of Plaintiff's words and actions, as well as the effect of his words and actions in this case, and reasonable grounds for the actions of the Charlottesville City Council.

### IV. Rule D(9)(g) of the Council Meeting Procedures is not overbroad, vague or unconstitutional.

For all of the reasons previously stated in its Brief in Support of Rule 12(b)(6) Motion To Dismiss and its Reply Brief in Support of 12(b)(6) Motion To Dismiss, Rule D(9)(g) of the *Council Meeting Procedures* is not vague, overbroad, or unconstitutional, and this Defendant requests this Court to enter an order providing that Rule D(9)(g) of the *Council Meeting Procedures* is not vague, overbroad, or unconstitutional.

WHEREFORE, for the reasons stated above, the request stated in the Amicus Curiae Brief, to "…hold that the City Council Rules prohibiting group defamation as unconstitutional…", is contrary to the facts and applicable law..

>Respectfully submitted,
>
>CITY OF CHARLOTTESVILLE
>
>By: _____/s/_____
>    Of Counsel

John A. Conrad
Virginia State Bar # 17640
Attorney for City of Charlottesville
**The Conrad Firm**
1520 W. Main Street, Suite 204
Richmond, Virginia  23220
(804) 359-6062 (phone)
(804) 359-6064 (fax)
jconrad@theconradfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2016, I will electronically file the foregoing with the Clerk of Court using CM/ECF system, who will then send notification of such filing to:

John Joshua Wheeler, Esq.
Thomas Jefferson Center
400 Worrell Drive
Charlottesville, VA  22911-8691

<pre>                            /s/                    </pre>
John A. Conrad
Virginia State Bar # 17640
Attorney for City of Charlottesville
**The Conrad Firm**
1520 W. Main Street, Suite 204
Richmond, Virginia  23220
(804) 359-6062 (phone)
(804) 359-6064 (fax)
jconrad@theconradfirm.com

11